**KATES NUSSMAN ELLIS**
**FARHI & EARLE, LLP**
190 Moore St., Suite 306
Hackensack, NJ 07601
(201) 488-7211
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **VICTORIA BRIGHTMAN,**<br><br>**Plaintiff,**<br><br>v.<br><br>**PHYSICIAN AFFILIATE GROUP OF NEW YORK, P.C., and NICOLE DELTS and REGINALD D. ODOM, individuallly,**<br><br>**Defendant.** | **Case No.: 1:20-cv-4290**<br><br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

Plaintiff **VICTORIA BRIGHTMAN,** residing in Bergen County, New Jersey, by way of Complaint against the Defendant named herein, says:

## JURISDICTION

1.      This Court has jurisdiction of this action pursuant to the following statutes:

A.      28 U.S.C.§ 1331, as this action arises under the United States Constitution and/or laws or treaties of the United States;

B.      28 U.S.C.§1332, as there is Diversity of Citizenship between the Plaintiff and the Defendants;

C.      42 U.S.C. § 12182, et seq., the Americans With Disabilities Act;

D.      29 U.S.C.§201, et seq., the Equal Pay Act;

E.      42 U.S.C. § 2000e, et seq., Title VII of the Civil Rights Act of 1964;

F.      28 U.S.C. § 1367, which gives this Court's supplemental jurisdiction over issues actionable under state law.

**THE PARTIES**

1.     That at all times hereinafter mentioned, the causes of action arose in the State of New York, County of New York.

2.     Physician Affiliate Group of New York, P.C. ("PAGNY"), with offices at 55 W 125th Street, Suite 1001, New York, NY, is a private healthcare company that contracts with New York City Correctional Health Services ("NYC-CHS")to provide medical care to inmates at correctional facilities in Manhattan, Rikers Island, and Brooklyn.

3.     Reginal D. Odom ("Odom") is the Chief Human Resources Officer of PAGNY with whom Plaintiff had direct communication with while she was employed there.

4.     Nicole Delts ("Delts") is the Corporate Human Resources Director at PAGNY with whom Plaintiff had direct communication with while she was employed there.

5.     Plaintiff was an employee of PAGNY serving as a Physician Assistant, from May 16, 2016 through August 9, 2019, primarily at PAGNY's office located at 125 White Street, New York, NY.

6.     Plaintiff's national origin is Nigerian, and she is a woman residing in New Jersey.

**FACTS COMMON TO ALL COUNTS**

7.     Plaintiff repeats, reiterates and realleges each and every allegation of Paragraphs 1 through 6 of the Complaint as if more fully set forth at length herein.

8.     That on or about May 3, 2014, Plaintiff suffered a head injury which resulted in physical disabilities and limitations to her ability to lift and walk, instability in her knees, and which now forces her to use a wheelchair and quad cane to assist with her mobility.  Due to this injury, Plaintiff suffers from a "qualified disability" and physical impairment that substantially limits her major life activity, prevents the exercise of normal bodily function, and for which reasonable workplace accommodations were needed under the Americans with Disabilities Act of 1990.

9.      That on or about May 16, 2016, Plaintiff was hired by PAGNY as Physician Assistant.

10.     That when Plaintiff was hired by PAGNY she requested and received accommodations due to her disability, which included allowed use of a wheelchair and another device to assist in ambulation, an escort to enter and exit the elevator and access her worksite, payment for 8 hours per shift instead of 7.5 as she took no break and did not leave her desk, and permission to work double shifts to reduce the number of days per week she had to commute to work.

11.     That during September 2016 Plaintiff met with PAGNY's human resources to discuss a new hourly rate of pay.  During this meeting PAGNY informed plaintiff that to receive a pay increase she would need to work in the mental health department.  Plaintiff requested information about vacancies in this department, and PAGNY assured her that while there were no current vacancies, any new openings would be posted internally for PAGNY employees to apply to.

12.     That during November 2016 Plaintiff met with PAGNY's human resources to voice concerns about equal pay.

13.     That during September and October 2017, Plaintiff met with PAGNY's Human Resources department to voice her concerns about equal pay and pay disparity, during which time Plaintiff was again assured that any vacant positions that would offer additional pay would be posted internally.

14.     That during November 2017 a new position was created in the mental health department and given to Plaintiff's male colleague without the position being posted or applications being solicited, which resulted in Plaintiff's male colleague, who was on the same pay scale with Plaintiff and who possessed the same credentials and equal or fewer years of Physician Assistant experience as Plaintiff,  receiving an additional $20,000 in salary, a substantial raise in pay.  The male colleague's spouse was the head of the mental health department, and this new position did not require Plaintiff's male colleague to obtain any additional credentials or certifications, and to

Plaintiff's understanding the new position had fewer responsibilities. This violates the Equal Pay Act of 1963, which prohibits an employer from providing different compensation to members of the opposite sex who possess the same credentials, experience, and responsibilities. This also violates both the New York State Human Rights Law and the New York City Human Rights Law, which prohibit an employer from discriminating against an employee in compensation or barring from employment any person on the basis of sex and disability.

15.     That on or about March 26, 2018, April 18, 2018, and April 26, 2018, Plaintiff submitted complaints to PAGNY's Human Resources regarding gender pay disparity and sex discrimination because she was not given an opportunity to apply to the position given to her male colleague and because she was not being compensated at the same rate as her male colleague with the same credentials and the same or fewer years of experience as her, and who had similar responsibilities.

16.     That between January 2018 and May 2018 Plaintiff was forced to take ADA medical leave due to her disability and other medical emergency.

17.     That on  while on ADA medical leave Plaintiff was terminated by PAGNY via Delts on May 9, 2018,  in willful retaliation for taking medical leave and for submitting complaints regarding equal pay, gender pay disparity, disability and sex discrimination.  This was a violation of the Family and Medical Leave Act of 1993 ("FMLA") which prohibits discharge or retaliation against an employee for taking medical leave.  At this time Plaintiff was transported to the hospital via 911 due to elevated blood pressure, chest pain, and her prior cerebrovascular accident.

18.     That on May 23, 2018, a grievance hearing was held before Plaintiff's union, during which Delts asked Plaintiff why she was sitting in a wheelchair and stated, "We don't need any wheelchair here." When Plaintiff attempted to explain she was an American with a disability under the American's with Disabilities Act of 1990, Delts asked Plaintiff the meaning of  "ADA."

19.     That during June 2018, Plaintiff was reinstated to her position, but the reasonable accommodations granted due to her physical disability were now denied by PAGNY via Delts. PAGNY also forced Plaintiff to provide new medical notes from her medical provider showing she required an accommodation. The revoked accommodations included assistance to and from the elevator in the building and permission to work a flexible schedule of double shifts so as to limit her commute time.  Prior to termination, Plaintiff was doing three shifts per week or double shifts. By denying these accommodations PAGNY was in violation of the Americans with Disabilities Act of 1990 which requires an employer to make reasonable accommodations for a disabled person who is otherwise qualified, unless the employer is able to show the accommodations cause an undue hardship.  The accommodations Plaintiff requested did not cause an undue hardship because PAGNY had already granted them to her since she was hired in May 2016, and only denied them after she was terminated in retaliation for submitting complaints of equal pay, gender pay disparity and sex discrimination.

20.     That on June 14, 2018, Plaintiff requested reinstatement of her accommodations, including an allowance to work double shifts to reduce commuting time and a request to work remotely, as much of her work was completed over the internet.  The remote work was denied even though PAGNY had telemedicine provision in the workforce.

21.     That on June 19, 2018, Plaintiff again submitted a complaint to Human Resources regarding equal pay, gender disparity and sex discrimination due to her male colleague with the same credentials and the same or fewer years of experience receiving a pay raise and a new position that was Plaintiff was not given an opportunity to apply for.

22.     That on or about August 9, 2018, in retaliation to her requests for disability accommodations and for taking medical leave, Plaintiff's hours were reduced from 24 hours per week to 8 hours per week, with those hours being completed on Wednesday of each week, except

where Plaintiff prearranged to change the day due to a scheduled doctor's appointment, and PAGNY did not permit Plaintiff to work double shifts, although Plaintiff knew other employees were permitted to.  This shows retaliation and denial of double shifts available to other employees shows that PAGNY retaliated against Plaintiff for taking medical leave in violation of the FMLA.  PAGNY also discriminated against Plaintiff on the basis of her disability which is prohibited by the Americans with Disabilities Act of 1990, the New York State Human Rights Law, and the New York City Human Rights Law.

23.    That during September 2018, Plaintiff met with Odom, PAGNY's Chief Human Resources Officer, and again voiced her concerns regarding equal pay and work accommodations.

24.    That Odom presented no evidence to justify PAGNY's failure to pay Plaintiff an amount equal to that of her similarly situated male colleague, or why that male colleague was hired by his spouse, the head of the mental health department, into a position in the mental health department that involved a pay increase.  That position was not posted internally, and  Plaintiff did not have an opportunity to apply for it.  This was a violation of the Equal Pay Act, Title VII of the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990.

25.    That from August 2018 to November 2018 Plaintiff was absent on emergency medical leave but notified PAGNY according to company protocols.

26.    That during September 2018 Plaintiff again submitted complaints regarding equal pay and gender pay discrimination to PAGNY's Human Resources because her male colleague with the same credentials and the same or fewer years of experience as a physician assistant received a pay raise and a new position which PAGNY did not allow Plaintiff to apply for.

27.    That on or about October 17, 2018, in a further act of retaliation for Plaintiff submitting gender pay disparity and sex discrimination complaints, PAGNY denied Plaintiff's requests for reasonable accommodations for her disability which included assistance to and from the

elevator in her work building, to telecommute based on her doctor's appointments, and to be paid for a full 8 hour day (instead of 7.5 hours) because she did not take her break and remained at her desk due to her disability.

28.    That on or about October 17, 2018, in an act of further discrimination based on Plaintiff's disability, Delts informed Plaintiff that if she did not agree to a reduction from 24 hours per week to 8 hours per week, PAGNY would deem Plaintiff resigned.

29.    That on or about October 29, 2018, Plaintiff again requested the accommodations PAGNY was required to provide her under the Americans with Disabilities Act of 1990, that had been granted to her from May 2016 until PAGNY withdrew them in retaliation in June 2018, after Plaintiff submitted a complaint regarding gender pay disparity and discrimination on the basis of sex. Plaintiff also again requested permission to work a flex schedule of either Monday, Wednesday, or Friday (not just Wednesday) and double shifts as she had prior to her termination and reinstatement in May 2018.

30.    That on or about November 5, 2018, Plaintiff received medical clearance from her doctor to return to work, which was forwarded to NYC Correctional Services and PAGNY's human resources, but in an act of discrimination based on her disability, Delts removed Plaintiff from the work schedule and insisted she be fingerprinted to receive security clearance, despite Plaintiff having completed multiple fingerprints.

31.    That on or about November 8, 2018, plaintiff completed her fingerprinting with another male physician assistant, who was permitted to return to work immediately, while PAGNY Human Resources refused to put Plaintiff back on the schedule, claiming Plaintiff had gone "AWOL" despite possessing documentation of her calling out sick according to Union and PAGNY protocol.  This was discrimination on the basis of Plaintiff's disability in violation of the Americans with Disabilities Act of 1990 and discrimination on the basis of sex in violation of Title VII of the

Civil Rights Act of 1964 which prohibits limitations on employment on the basis of sex, and also in violation of the FMLA, which prohibits discrimination and retaliation for taking medical leave.

32.     That on December 7, 2018, Plaintiff was reinstated to the PAGNY work schedule without any reasonable accommodations for her disability, an act of discrimination in violation of the Americans with Disabilities Act of 1990.

33.     That Plaintiff was not paid for the 90 hours PAGNY intentionally kept her off the schedule during November 2018, while the same male colleague that had received fingerprinting with Plaintiff was paid for the days he was off the schedule.  This was an act of discrimination on the basis of sex in violation of the Equal Pay Act of 1963, which prohibits an employer from providing different compensation to members of the opposite sex who possess the same credentials, experience, and responsibilities.

34.     That in March 2019 Plaintiff was again forced to take ADA medical leave and emergency medical leave, although she still participated in mandated computer training on April 15, 2019, and July 11, 2019.

35.     That on or about May 20, 2019, in further discrimination in violation of the Americans with Disabilities Act of 1990, PAGNY disciplined Plaintiff for excessive absences when she had properly notified PAGNY of her medical leave according to company protocol.  This discipline was in the form of a Corrective Action Memorandum which indicated Plaintiff had received a verbal warning from PAGNY while she was on medical leave, which she had not.

36.     That during one of the mandated training sessions on July 11, 2019, a managing doctor at NYC-CHS told Plaintiff he had discussed with Delts that Plaintiff should consider retiring because she had been sick too much, an act which evidences the pattern of discrimination on the basis of Plaintiff's disability. This was the same NYC-CHS managing doctor that completed  the fraudulent verbal warning disciplinary form dated May 20, 2019.

37.     That on August 14, 2019, Plaintiff received clearance from her medical provider to return to work beginning in September 2019.

38.     That during August 2019, Plaintiff received an email from Odom indicating PAGNY would be terminating Plaintiff for failure to report to work despite being on ADA medical leave, while to the best of her knowledge Plaintiff's male colleague who was also on medical leave was not disciplined nor terminated.  This a further act of discrimination on the basis of her disability in violation of the Americans with Disabilities Act of 1990, the New York State Human Rights Law, and the New York City Human Rights Law, as these all prohibit the discharge of an employee due to their disability.

39.     That on or about October 3, 2019, Plaintiff filed a complaint with the U.S. Equal Opportunity Commission ("EEOC") for employment discrimination in Violation of the Americans with Disabilities Act of 1990, and on the basis of her race, color, national origin, and sex, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act and the Family and Medical Leave Act of 1993.

40.     That on or about March 13, 2020, Plaintiff received a Dismissal and Notice of Rights from the EEOC, dated March 11, 2020, which provided that Plaintiff has ninety (90) days from the receipt of said Notice to commence a private lawsuit in either Federal or State Court, under the Provisions of Tile VII, the Americans with Disabilities Act, or the Equal Pay Act against any responsible party.

41.     This suit is filed within ninety (90) days of March 11, 2020, and within three (3) years of the termination of Plaintiff's employment.

## AS AND FOR A FIRST CAUSE OF ACTION

### Disability Discrimination – Failure to Accommodate and Discharge
### on the Basis of Disability

42.     Plaintiff repeats each and every allegation of Paragraphs 1 through 41 of the

Complaint as if more fully set forth at length herein.

43.     The Americans with Disabilities Act of 1990 states in part that discrimination against a qualified individual includes not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, except where the employer can show undue hardship.  42 U.S.C. § 12112(b)(5)(A). Disability discrimination exists where the plaintiff shows that (1) she suffers from a disability, (2) was discharged from a position, (3) was qualified to hold the position, and (3) the circumstances surrounding her discharge gave rise to an inference of disability discrimination. *Gill v. Maul*, 61 AD3d 1159, 1160 [3d Dept 2009].

44.     Plaintiff suffers from a disability due to limitations in her ability to lift and walk as well as instability in her knees which forces her to use a wheelchair and quad cane for mobility assistance.  Plaintiff's physical impairment and disability substantially limits her major life activities and prevents the exercise of normal bodily function.   Plaintiff is qualified for the position from which she was discharged as she has been a Physician Assistant for over 27 years and worked at PAGNY since 2016.  PAGNY discriminated against Plaintiff because of her disability by denying her request for reasonable accommodations she was entitled to under the Americans with Disabilities Act. The requested accommodations included assistance to the elevator, use of ambulatory devices, a flexible schedule instead of a set schedule, the ability to work remotely, double shifts, and pay for the full day when she took no break and remained at her desk.  These accommodations were reasonable and not an undue hardship, as demonstrated by the fact that they had all been in place for almost 2 years up until Plaintiff was initially terminated in May 2018, except for her ability to work remotely.  Plaintiff offered to pay for any equipment for the remote work but was denied. In addition, a managing doctor at NYC-CHS informed Plaintiff that she should retire due to her illnesses and drafted a disciplinary memorandum falsely indicating he had given Plaintiff a verbal

warning while she was out on sick leave. Also, Delts made it clear to Plaintiff that wheelchairs were not welcome at PAGNY by stating, "We don't need any wheelchair here." Denying reasonable accommodations that to do not cause an undue hardship to the employer, suggesting retirement to a disabled employee, and stating that Plaintiff's ambulatory devices were not welcome at PAGNY show discrimination on the basis of a disability and constitute violations of the Americans with Disabilities Act of 1990

**WHEREFORE**, as a direct and proximate result of the aforesaid acts, Plaintiff suffered and sustained damages, including loss of income and benefits, emotional distress, and pain and suffering, Plaintiff demands judgment against PAGNY and individuals for compensatory damages, interest, counsel fees, costs of suit and such other and further relief as the Court may deem just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION

**Retaliation – Failure to Accommodate and Discharge on the Basis of Disability**

45.     Plaintiff repeats each and every allegation of Paragraphs 1 through 44 of the Complaint as if more full set forth at length herein.

46.     The Americans with Disabilities Act of 1990 prohibits retaliation against any person who opposed a practice deemed unlawful under the Act.  42 U.S.C. § 12203.  There is a prima facia showing of retaliation where (1) the plaintiff has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (3) there is a causal connection between the protected activity and the adverse action. *Calhoun v. County of Herkimer*, 114 AD3d 1304, 1306 [4th Dept 2014].

47.     Plaintiff suffers from a disability due to physical limitations in her ability to lift, walk, or run, as well as instability in her knees which forces her to use a wheelchair and quad cane for mobility assistance.  Plaintiff's physical impairment substantially limits her major life activities and prevents the exercise of normal bodily function.  Plaintiff requested accommodations she was

entitled to under the Act and repeated these requests when they were denied or ignored. In retaliation for these requests, Plaintiff's hours were cut on October 17, 2018, from 24 hours per week to 8 hours per week. In addition, Plaintiff was removed from the schedule for several weeks without pay during November 2018, and was disciplined and terminated for taking sick leave. PAGNY's retaliation followed and was in direct response to Plaintiff's requests and was a violation of the Americans with Disabilities Act of 1990.

**WHEREFORE**, as a direct and proximate result of the aforesaid acts, Plaintiff suffered and sustained damages, including loss of income and benefits, emotional distress, and pain and suffering, Plaintiff demands judgment against PAGNY and individuals for compensatory damages, interest, counsel fees, costs of suit and such other and further relief as the Court may deem just and proper.

## AS AND FOR A THIRD CAUSE OF ACTION

### Violation of Title VII of the Civil Rights Act of 1964

48.    Plaintiff repeats each and every allegation of Paragraphs 1 through 47 of the Complaint as if more fully set forth at length herein.

49.    Title VII of the Civil Rights Act of 1964 prohibits discrimination with respect to compensation or employment opportunities on the basis of an individual's race, color, sex, or national origin. 42 U.S.C. § 2000e-2. A prima facie case of discrimination under Title VII is shown where the plaintiff (1) is a member of a protected class, (2) was qualified to hold the position, (3) was terminated from employment or suffered another adverse employment action, and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination. *Gonzalez v. New York State Off. of Mental Health*, 26 Misc 3d 1227(A) [Sup Ct 2010].

50.    Plaintiff is a member of protected class because she is an African American woman and her national origin is Nigerian. Plaintiff was qualified to hold her position as she was a

Physician Assistant for at least 27 years and worked with PAGNY since 2016.  Plaintiff suffered an adverse employment action when PAGNY offered her male colleague with the same credentials and the same or fewer years of experience as Plaintiff a position for which Plaintiff was not given an opportunity to apply to. The male received favorable treatment because his spouse is part of management.  In addition, Plaintiff's male colleague was given a substantial pay raise, despite this new position not requiring any additional certifications and, to the best of Plaintiff's knowledge, having fewer responsibilities.  PAGNY refused to compensate Plaintiff at the same rate as her male colleague even when the pay disparity was brought to the attention of PAGNY's human resources. Further, when Delts removed Plaintiff from the schedule, allegedly for required fingerprinting, her other male colleague was able to return to work the same day, while Plaintiff was forced off the schedule for several weeks, without pay.  In addition, Plaintiff's similarly situated male colleague was paid for the time he was not on the schedule, and Plaintiff was not.  Lastly, PAGNY disciplined and terminated Plaintiff for taking medical leave, despite Plaintiff notifying them of this according to protocol and submitting medical documents to PAGNY.  On the other hand, Plaintiff's similarly situated male colleague, who to the best of Plaintiff's knowledge was also on medical leave, during the January 2019 period, was neither disciplined nor terminated.  Thus, PAGNY's and Delt's actions demonstrate a clear violation of Title VII of the Civil Rights Act of 1964.

   **WHEREFORE**, as a direct and proximate result of the aforesaid acts, Plaintiff suffered and sustained damages, including loss of income and benefits, emotional distress, and pain and suffering, Plaintiff demands judgment against PAGNY and individuals for compensatory damages, interest, counsel fees, costs of suit and such other and further relief as the Court may deem just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION

### Violation of the Equal Pay Act of 1963

   51.    Plaintiff repeats each and every allegation of Paragraphs 1 through 50 of the

Complaint as if more fully set forth at length herein.

52.     The Equal Pay Act of 1963 which prohibits an employer from paying employees of the opposite sex with the same credentials and responsibilities different amounts. 29 U.S.C. § 206(d). There is a prima facie case of discrimination under the Equal Pay Act where (1) the employer pays different wages to employees of the opposite sex, (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility, and (3) the jobs are performed under similar working conditions. *Fenton v St. Lawrence County*, 36 AD3d 1102, 1103 [3d Dept 2007].

53.     PAGNY gave Plaintiff's male colleague a pay raise for a position that was not advertised and for which PAGNY did not give Plaintiff an opportunity to apply. This position, for which Plaintiff's male colleague received a substantial pay raise, did not require any additional credentials and, to the best of Plaintiff's knowledge, required less effort and responsibility. Therefore, Plaintiff was denied a pay raise and equal pay on the basis of her sex in violation of the Equal Pay Act.

**WHEREFORE**, as a direct and proximate result of the aforesaid acts, Plaintiff suffered and sustained damages, including loss of income and benefits, emotional distress, and pain and suffering, Plaintiff demands judgment against PAGNY and individuals for compensatory damages, interest, counsel fees, costs of suit and such other and further relief as the Court may deem just and proper.

### AS AND FOR A FIFTH CAUSE OF ACTION

**Violation of the New York State Human Rights Law - Discrimination**

54.     Plaintiff repeats each and every allegation of Paragraphs 1 through 53 of the Complaint as if more fully set forth at length herein.

55.     The New York State Human Rights Law prohibits an employer from discharging an employee, discriminating in compensation, or barring from employment on the basis of race, color, sex, and national origin. N.Y. Exec. Law § 296(1)(a) (McKinney).

56.     To show discrimination under the New York State Human Rights Law, Plaintiff must establish that (1) she is a member of a protected class, (2) she was qualified to hold the position, (3) she suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Reichman v. City of New York*, 179 AD3d 1115, 1116-17 [2d Dept 2020]

57.     Plaintiff is an African American woman, of Nigerian national origin, who suffers from a physical disability which impairs normal bodily function and qualifies her as a member of a protected class under the New York Human Rights Law.  Plaintiff has been a Physician Assistant for at least 27 years and has worked with PAGNY since 2016 when PAGNY took over NYC Riker's Island Contract and is thus qualified for the position she held.  Plaintiff was denied reasonable accommodations for her disability and was disciplined and terminated for taking medical leave in absence, while PAGNY did not terminate or discipline her male colleague for taking medical leave. When Plaintiff was removed from the schedule to receive fingerprinting, she was not reinstated for several weeks and was denied pay, unlike her male colleague who PAGNY returned to the schedule immediately and who PAGNY compensated for the time he was off the schedule. These circumstances give rise to an inference that plaintiff was discriminated against, disciplined, terminated, and denied equal pay on the basis of her disability, , race, color, and national origin. This is a violation of the New York State Human Rights Law

**WHEREFORE**, as a direct and proximate result of the aforesaid acts, Plaintiff suffered and sustained damages, including loss of income and benefits, emotional distress, and pain and suffering, Plaintiff demands judgment against PAGNY and individuals for compensatory damages, interest, counsel fees, costs of suit and such other and further relief as the Court may deem just and proper.

## AS AND FOR A SIXTH CAUSE OF ACTION

### Violation of the New York State Human Rights Law– Retaliation

58.     Plaintiff repeats each and every allegation of Paragraphs 1 through 57 of the Complaint as if more fully set forth at length herein.

59.     The New York State Human Rights Law prohibits the retaliation against any person that opposes or files a complaint against discriminatory practices that are prohibited under these laws.  N.Y. Exec. Law § 296(7) (McKinney).

60.     There is retaliation under the New York State Human Rights Law where (1) the plaintiff has engaged in protected activity, (2) the employer was aware that plaintiff engaged in such activity, (3) the plaintiff suffered an adverse employment action based upon that activity, and (4) there is a causal connection between the protected activity and the adverse action. *Ananiadis v Mediterranean Gyros Products, Inc.*, 151 AD3d 915, 918-19 [2d Dept 2017].

61.     Plaintiff participated in a protected activity by repeatedly submitting complaints regarding gender pay disparity and sex discrimination because Plaintiff was not compensated at the same rate as her male colleague who had the same credentials and Physician Assistant experience, and because she was not given an opportunity to apply for the position he was given. PAGNY was aware of these complaints because they were submitted to the same Human Resources personnel, Delts and Odom, that discharged her.  PAGNY disadvantaged Plaintiff in retaliation to these complaints by terminating her following her first complaints, reinstating her but denying her the ADA accommodations to which she was entitled, removing her from the schedule without pay following her second complaints, disciplining her for taking medical leave, and discharging her. These retaliatory actions are in violation of the New York State Human Rights Law.

**WHEREFORE**, as a direct and proximate result of the aforesaid acts, Plaintiff suffered and sustained damages, including loss of income and benefits, emotional distress, and pain and suffering,

Plaintiff demands judgment against PAGNY and individuals for compensatory damages, interest, counsel fees, costs of suit and such other and further relief as the Court may deem just and proper.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### Violation of the New York City Human Rights Law - Discrimination

62.     Plaintiff repeats each and every allegation of Paragraphs 1 through 61 of the Complaint as if more fully set forth at length herein.

63.     The New York City Human Rights Law prohibits an employer from discharging an employee, discriminating against an employee in compensation or privileges of employment, or representing a position is not available when it is in fact available because of a disability or on the basis of race, color, gender, and national origin. New York City, N.Y., Code § 8-107(1).

64.     To show discrimination under the New York City Human Rights Law, Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified to hold her position; (3) she was terminated from employment or suffered an adverse employment action; and (4) the discharge or other adverse action occurred under circumstances giving rise to an inference of discrimination. *Hamburg v. New York Univ. School of Medicine*, 155 AD3d 66, 74 [1st Dept 2017].

65.     Plaintiff is an African American woman, of Nigerian national origin, who suffers from a physical disability which impairs normal bodily function and qualifies her as a member of a protected class under the New York City Human Rights Law.  Plaintiff has been a Physician Assistant for at least 27 years and has worked with PAGNY since 2016 when PAGNY took over NYC Riker's Island Contract and is thus qualified for the position she held.  Plaintiff was denied reasonable accommodations for her disability and was disciplined and terminated for taking medical leave, while PAGNY did not terminate or discipline her male colleague for taking medical leave.  When Plaintiff was removed from the schedule to receive fingerprinting, she was not

reinstated for several weeks and was denied pay, unlike her male colleague who PAGNY returned to the schedule immediately and who PAGNY compensated for the time he was off the schedule.  In addition, Plaintiff was repeatedly informed by PAGNY's human resources department that positions within the mental health division were not available, and that if one became available, it would be posted internally so that Plaintiff would have an opportunity to apply.  When such a position opened, it was given to Plaintiff's male colleague, whose wife was the head of the mental health division. This resulted in Plaintiff's male colleague receiving a substantial pay raise, despite the fact that the position had fewer responsibilities and that he had the same credentials and the same or fewer years of Physician Assistant experience as Plaintiff.  Thus, Plaintiff was denied the opportunity to apply for this position and did not have a chance to receive a similar pay raise.  These circumstances give rise to an inference that plaintiff was discriminated against on the basis of her gender, disability, race, color, and national origin in violation of the New York City Human Rights Law.

**WHEREFORE**, as a direct and proximate result of the aforesaid acts, Plaintiff suffered and sustained damages, including loss of income and benefits, emotional distress, and pain and suffering, Plaintiff demands judgment against PAGNY and individuals for compensatory damages, interest, counsel fees, costs of suit and such other and further relief as the Court may deem just and proper.

## AS AND FOR AN EIGHTH CAUSE OF ACTION

### Violation of the New York City Human Rights Law – Retaliation

66.    Plaintiff repeats each and every allegation of Paragraphs 1 through 66 of the Complaint as if more fully set forth at length herein.

67.    The New York City Human Rights Law prohibits the retaliation against any person that opposes or files a complaint against discriminatory practices that are prohibited under these laws. New York City, N.Y., Code § 8-107(7).

68.    Under the New York City Human Rights Law, there is retaliation where the plaintiff

(1) participated in a protected activity known to the defendant, (2) defendant took an action that disadvantaged her, and (3) a causal connection exists between the protected activity and the adverse action. *Cadet-Legros v. New York Univ. Hosp. Ctr.*, 135 AD3d 196, 206 [1st Dept 2015].

69.     Plaintiff participated in a protected activity by repeatedly submitting complaints regarding gender pay disparity and sex discrimination because Plaintiff was not compensated at the same rate as her male colleague who had the same credentials and Physician Assistant experience, and because she was not given an opportunity to apply for the position he was given. PAGNY was aware of these complaints because they were submitted to the same Human Resources personnel, Delts and Odom, that discharged her.  PAGNY disadvantaged Plaintiff in retaliation to these complaints by terminating her following her first complaints, reinstating her but denying her the ADA accommodations to which she was entitled, removing her from the schedule without pay following her second complaints, disciplining her for taking medical leave, and discharging her. These retaliatory actions are in violation of the New York City Human Rights Law.

**WHEREFORE**, as a direct and proximate result of the aforesaid acts, Plaintiff suffered and sustained damages, including loss of income and benefits, emotional distress, and pain and suffering, Plaintiff demands judgment against PAGNY and individuals for compensatory damages, interest, counsel fees, costs of suit and such other and further relief as the Court may deem just and proper.

### AS AND FOR A NINTH CAUSE OF ACTION

### Violation of the Family and Medical Leave Act of 1993 - Retaliation

70.     Plaintiff repeats each and every allegation of Paragraphs 1 through 70 of the Complaint as if more fully set forth at length herein.

71.     The Family and Medical Leave Act of 1993 prohibits an employer from discharging or in any other manner discriminating against an individual who has exercised his or her rights under the Act. 29 U.S.C. § 2615.  A prima facie case for retaliation under the FMLA exists where (1) the

plaintiff exercised protected rights under the FMLA, (2) the plaintiff was qualified for the position, (3) the plaintiff suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent. *Potenza v. City of New York*, 365 F3d 165, 168 [2d Cir 2004].

72.    Plaintiff exercised her rights under the FMLA by taking emergency medical leave from January 2018 to the beginning of May 2018.  Plaintiff was qualified for her position, as she was a Physician Assistant for over 27 years and had worked with PAGNY since 2016.  Plaintiff suffered an adverse employment action as PAGNY terminated her before she could return to work in May 2018, and only reinstated her after a grievance hearing before Plaintiff's union.  During this hearing, Delts made it clear Plaintiff was not welcome at PAGNY by questioning Plaintiff's use of a wheelchair and stating, "We don't need any wheelchair here."  Upon her reinstatement, PAGNY removed the necessary and reasonable accommodations Plaintiff had received due to her disability. PAGNY, Delts, and Odom repeatedly ignored or denied Plaintiff's requests for the reinstatement of these accommodations.  PAGNY continued a clear pattern of discrimination and willful retaliation against Plaintiff for taking medical leave by denying her an opportunity to apply for a higher paid position, creating a disciplinary memorandum falsely indicated Plaintiff had received a verbal warning, removing her from the schedule for several weeks, cutting her hours, and ultimately terminating her in August 2019.  PAGNY, Delts, and Odom's retaliatory intent can be inferred from these circumstances and their actions, which were violations of the FMLA.

**WHEREFORE**, as a direct and proximate result of the aforesaid acts, Plaintiff suffered and sustained damages, including loss of income and benefits, emotional distress, and pain and suffering, Plaintiff demands judgment against PAGNY and individuals for compensatory damages, interest,

counsel fees, costs of suit and such other and further relief as the Court may deem just and proper.

**KATES, NUSSMAN, ELLIS,**
**FARHI & EARLE, LLP**
Attorneys for Plaintiff

/s/  Michael Farhi, Esq.
Michael Farhi

Dated:  June 5, 2020

## DESIGNATION OF TRIAL COUNSEL

Michael Farhi, Esq. is hereby designated as trial counsel in this matter.

**KATES, NUSSMAN, ELLIS,**
**FARHI & EARLE, LLP**
Attorneys for Plaintiff
.
s/  Michael Farhi, Esq.
Michael Farhi

Dated:    June 5, 2020

## CERTIFICATION OF NO OTHER ACTIONS

I certify that to my best knowledge the matter in controversy is not the subject of any other

action pending in any court, or of any pending arbitration or administrative proceeding.

**KATES, NUSSMAN, ELLIS,**
**FARHI & EARLE, LLP**
Attorneys for Plaintiff

/s/  Michael Farhi, Esq.
Michael Farhi

Dated:    June 5, 2020

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues raised in the within Complaint.

**KATES, NUSSMAN, ELLIS,**
**FARHI & EARLE, LLP**
Attorneys for Plaintiff

/s/  Michael Farhi, Esq.
Michael Farhi

Dated:    June 5, 2020