UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
                                        :
VICTORIA BRIGHTMAN,                     :
                                        :       20cv4290 (DLC)
                         Plaintiff,     :
                                        :       OPINION AND ORDER
            -v-                         :
                                        :
PHYSICIAN AFFLIATE GROUP OF NEW YORK,   :
P.C., REGINALD D. ODOM, and NICOLE      :
DELTS,                                  :
                                        :
                         Defendants.    :
                                        :
--------------------------------------- X

APPEARANCES:

For plaintiff Victoria Brightman:
Michael Farhi
Sandra M. Barsoum
Kates Nussman Ellis Farhi & Earle, LLP
190 Moore Street, Suite 306
Hackensack, NJ 07601

For defendants Physician Affiliate Group of New York, P.C.,
Reginald D. Odom, and Nicole Delts:
Natalie S. Marcus
New York City Law Dept., Office of the Corporation Counsel
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

Victoria Brightman worked as a physician assistant at the

Rikers Island jail complex.  She brings suit against her former

employer, Physician Affiliate Group of New York, P.C. ("PAGNY"),

and two PAGNY human resources officials for discrimination and a

hostile work environment, as well as retaliation.  She alleges

that the defendants discriminated against her on the basis of

her gender and disability, subjected her to a hostile work
environment on the basis of her gender and disability, and
retaliated against her when she objected to this mistreatment.
The defendants have moved to dismiss many of the plaintiff's
claims pursuant to Rule 12(b)(6), Fed R. Civ. P.  They have not
moved to dismiss Brightman's disability discrimination claims,
except for those which they assert are untimely.  For the
following reasons, the motion to dismiss is largely granted.

## Background

The following facts are derived from Brightman's First
Amended Complaint and are assumed to be true.

Plaintiff Victoria Brightman is a physician assistant.
Shortly after securing her New York physician assistant's
license in 1992, she began to work as a physician assistant with
New York City Correctional Health Services ("NYC-CHS") providing
medical care to inmates at the Rikers Island jail complex, and
she worked there until the events giving rise to this
litigation.  NYC-CHS did not employ medical staff directly, but
instead contracted with an outside vendor that employed the
medical professionals who worked at NYC-CHS facilities.  When
NYC-CHS changed vendors, medical staff who wished to continue
their employment with NYC-CHS were expected to apply to the new
vendor, and non-managerial employees such as Brightman were

automatically hired by each new vendor.  Several vendors
employed Brightman during her tenure at NYC-CHS.  Brightman was
also a member of a union that collectively bargained with the
contract vendor and NYC-CHS regarding the terms and conditions
of employment for NYC-CHS physician assistants.

On May 3, 2014, Brightman suffered a severe head injury
while working for NYC-CHS on Rikers Island.  At the time, the
NYC-CHS medical services contractor was a company called Corizon
Health, and Brightman was a Corizon Health employee.  As a
result of her head injury, Brightman experienced a cerebral
hemorrhage that left her partially paralyzed and dependent on a
wheelchair and cane for mobility.  Pursuant to the collective
bargaining agreement between her union and her employer, she
took approximately two years of medical leave to recover from
her injuries.

In May 2016, Brightman sought to return to work.  By that
time, PAGNY had taken over the NYC-CHS contract, and PAGNY
rehired her for a physician assistant position.  Due to her
disability stemming from her workplace injury, Brightman
requested several accommodations from PAGNY's human resources
department.  She requested permission to use a wheelchair and
another assistive device, the assistance of an escort when
entering and exiting the workplace, pay for eight hours per

shift (rather than the standard 7.5 hours of pay per shift awarded to most PAGNY physician assistants) because her disability made it difficult for her to leave her work area for a break, and permission to work double shifts to reduce the number of days she was forced to commute to work.  These requests were granted, and Brightman returned to work three days per week.

In August 2016, Brightman learned that certain male physician assistants with less experience and seniority than she had were being paid at a higher hourly rate than she received. Brightman raised this issue with her union representative and was directed to address it with PAGNY.  In September 2016, Brightman met with Natalie Scott, a human resources staffer at PAGNY, to address this pay disparity.  Her request for increased pay was denied at that meeting.  She was informed that the male physician assistants that she had identified were compensated at a higher rate because they worked in the mental health department, and she worked in the medical department.  The published job descriptions and required qualifications for physician assistants in the medical department and the mental health department are identical, and physician assistants in both departments are exposed to the risks of providing medical care in a correctional setting.

Although Brightman was denied a pay increase at her
September 2016 meeting with Scott, she was informed that she
could apply for any vacancy that may arise in the mental health
department.  Unsatisfied with the result of her meeting with
Scott, Brightman met with defendant Reginald Odom, the chief
human resources officer of PAGNY, in November 2016.  Odom
informed her that if she wished to secure a pay increase, she
could apply to a vacancy in the mental health department if a
vacancy arose.

Between her meeting with Odom in November 2016 and
September 2017, Brightman regularly reviewed the PAGNY website
in search of announcements of physician assistant employment
opportunities in the mental health department.  These efforts
were unsuccessful, as no vacancy was announced.  Brightman then
met again with representatives of PAGNY'S human resources
department in September and October 2017 to express her
frustration with the disparity between her pay and that of less
experienced male physician assistants in the mental health
department.  She was informed that there were no vacant
positions in the mental health department but that any vacancy
would be announced internally.  In November 2017, Brightman
learned that a physician assistant vacancy in the mental health
department had become available, but that it had been

immediately given to a male PAGNY employee named Jean Luc
Bernard without any internal announcement or competitive
application process.  Bernard had fewer years of seniority at
NYC-CHS than Brightman, but he was married to Diane Novak, the
director of the mental health department at the Rikers Island
branch of NYC-CHS.

In January 2018, Brightman began to suffer from health
challenges stemming from her 2014 workplace injury, and she
requested medical leave.  The request was approved and Brightman
took medical leave from January to May 2018.  During her medical
leave, Brightman continued to submit complaints to Odom
regarding the pay disparity among NYC-CHS physician assistants.

On May 9, 2018, Brightman attempted to return to work.
When she arrived at her workplace, however, she was informed
that she had been discharged by PAGNY.  Brightman filed a
grievance with her union regarding her discharge and a grievance
hearing was held on May 23, 2018.  Defendant Nicole Delts,
PAGNY's Corporate Human Resources Director, attended the
hearing.  At the hearing, Delts made disparaging comments about
Brightman's disability and her use of a wheelchair.  Brightman's
grievance was sustained and she was reinstated to employment
effective in June of 2018.

After her reinstatement, Brightman returned to work on June 14, 2018.  When she arrived at work, she discovered that the previously agreed-upon accommodations were not available. Brightman raised the issue with Delts, and Delts informed her that the accommodations had been withdrawn and that she would have to reapply for them by, inter alia, providing medical documentation.  On June 19, Brightman complained to Odom about the withdrawal of the accommodations.  PAGNY then agreed to reinstate some of Brightman's accommodations, such as her request to use a wheelchair or cane at work, but denied her request for the assistance of an escort.  PAGNY also denied her requests to work double shifts and to work remotely while providing services via telemedicine.

On August 9, 2018, Brightman's hours were reduced significantly: while she had been scheduled to work twenty-four hours over the course of three days each week, she was reassigned to a new schedule that limited her to only eight hours each Wednesday.  Brightman perceived this schedule change as retaliatory and made a complaint to Odom regarding the perceived retaliation and discrimination.  Shortly after her schedule was changed, Brightman again experienced adverse effects of her injury, and she requested another medical leave. She then spent the period between August and November 2018 on

7

medical leave.  During this period, she made additional complaints to Odom regarding perceived discrimination.  While Brightman was on medical leave, Delts informed her that she would need to reapply for accommodation of her disability when she returned to work, and that she would have to resign if she did not accept a schedule of eight hours per week.

In late October 2018, Brightman's doctor cleared her to return to work, effective November 5, 2018.  Brightman notified PAGNY and NYC-CHS of her doctor's decision on October 29, 2018.  She also reiterated her request for the restoration of her accommodations and assignment to a three-day-per-week work schedule.  On November 5, Delts informed her that she had been removed from the work schedule because she had been "AWOL" from work, and that she would need to undergo a repeat security clearance and fingerprinting before being authorized to return to work on Rikers Island.

Brightman traveled to Rikers Island to undergo fingerprinting on November 8.  During the fingerprinting process, Brightman encountered a male colleague, Francisco Pagero, who was undergoing a repeat security screening process before being cleared to return to work after a medical leave.  After the screening, Brightman was not cleared to return to work for the entire month of November.  Pagero also experienced a

delay in being cleared to return to work, but Pagero was paid
for the scheduled shifts that he had been unable to work in
November 2018, and Brightman was not.

On December 7, 2018, Brightman returned to work on a one-
day-per-week schedule.  Again, she was not offered the
assistance of an escort in accessing her workstation.  In March
2019, Brightman again experienced health difficulties stemming
from her 2014 injury.  She requested, and was granted, medical
leave for the period between March and September 2019.  On May
20, 2019, while Brightman was on medical leave, she was issued a
Corrective Action Memorandum stating that she had received a
verbal warning regarding misconduct, but Brightman was not
informed of this memorandum when it was issued.  On July 11,
2019, while still on medical leave, Brightman participated in a
mandatory training session for PAGNY employees.  During that
session, Dr. Louise Cintron, the managing physician of PAGNY,
told Brightman that she had discussed Brightman's continued
employment with Delts, and suggested that Brightman "consider
retiring because she had been sick too much."

In August 2019, Brightman's doctor cleared her to return to
work, and Brightman notified the PAGNY human resources
department of her intent to return to work.  Shortly thereafter,
Brightman received an email from Odom informing her that she had

been discharged for failing to report to work while on medical
leave.

On October 3, 2019, Brightman filed a complaint with the
Equal Employment Opportunity Commission ("EEOC"), alleging that
PAGNY had discriminated against her.  The EEOC issued her a
right to sue letter on March 11, 2020.  Brightman filed this
case on June 5, 2020.  On October 23, the defendants moved for
partial dismissal of the complaint.  Brightman filed an amended
complaint on November 10, and the defendants again moved for
partial dismissal on December 18.  The motion to dismiss the
amended complaint became fully submitted on February 26, 2021.

## Discussion

Brightman alleges claims under Title VII of the Civil
Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the
Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 et
seq. ("ADA"); the Equal Pay Act of 1963, 29 U.S.C. § 206(d)
("EPA"); the Family and Medical Leave Act of 1993, 29 U.S.C. §
2615 ("FMLA"); the New York state Equal Pay Act, N.Y. Labor Law
§ 194 ("NYSEPA"); the New York State Human Rights Law, N.Y.
Exec. Law § 290 et seq. ("NYSHRL"); and the New York City Human
Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL").  The
defendants have moved to dismiss Brightman's sex discrimination
claims under Title VII, the NYSHRL, and the NYCHRL; her hostile

work environment claims under Title VII; her retaliation claims; and her EPA and NYSEPA claims.  The defendants have also moved to dismiss Brightman's ADA claims to the extent that they accrued before December 7, 2018.

When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P., a court "consider[s] the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor."  Brooklyn Ctr. for Psychotherapy, Inc. v. Philadelphia Indem. Ins. Co., 955 F.3d 305, 310 (2d Cir. 2020) (citation omitted).  "A complaint will survive a motion to dismiss so long as it contains sufficient factual matter to state a claim to relief that is plausible on its face."  Mandala v. NTT Data, Inc., 975 F.3d 202, 207 (2d Cir. 2020) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

I.   Statute of Limitations

The defendants move to dismiss some of Brightman's claims on the grounds that they are barred by the statute of limitations, contending that Brightman's Title VII and ADA discrimination, retaliation, and hostile work environment claims accruing before December 7, 2018, and her EPA claims accruing before June 8, 2017, are time barred.  For the following

reasons, the defendants' motion to dismiss these claims as time barred is granted, with the exception of defendants' motion to dismiss Brightman's ADA hostile work environment claim as time barred and their motion to dismiss Brightman's Title VII claim to the extent that it stems from alleged pay discrimination that occurred after October 3, 2017.[1]

A.   Legal Standard

A Title VII claim will be dismissed as untimely if the plaintiff has not filed a complaint with the EEOC within 180 days of the alleged unlawful employment practice that violated Title VII, or filed a complaint with an appropriate state or local agency within 300 days of the occurrence of the alleged employment practice.  42 U.S.C. § 2000e-5(e)(1).  The same limitations period applies to ADA claims.  42 U.S.C. § 12117(a).

Typically, every discrete adverse employment action that allegedly violates Title VII or the ADA "gives rise to a freestanding Title VII [or ADA] claim with its own filing deadline."  Chin v. Port Authority of New York & New Jersey, 685

---

[1] In her submission in opposition to the defendants' motion to dismiss, Brightman stated that she "withdraws [her] Title VII hostile work environment claim."  The defendants' motion to dismiss that claim will therefore be granted.  Brightman's submission also does not respond to the defendants' argument that her EPA claims accruing before June 8, 2017 are time barred.  Those claims are thus abandoned, and the defendants' motion to dismiss them is granted.

F.3d 135, 157 (2d Cir. 2012).  Therefore, where a plaintiff's
Title VII or ADA claim is premised on "discrete discriminatory
or retaliatory acts such as termination, failure to promote,
denial of transfer, or refusal to hire," those claims are barred
by the statute of limitations "if they occurred prior to the
300-day period even though they may be related to acts that
occurred within the permissible 300-day period."  Davis-Garett
v. Urb. Outfitters, Inc., 921 F.3d 30, 42 (2d Cir. 2019)
(quoting National R.R. Passenger Corp. v. Morgan, 536 U.S. 101,
113-14 (2002)).  The so-called "continuing violation doctrine,"
however, provides a limited exception to that general rule.
Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015).  That
doctrine applies to Title VII and ADA claims that "by their
nature accrue only after the plaintiff has been subjected to
some threshold amount of mistreatment," such as hostile work
environment claims, as well as claims based on "incident[s] of
discrimination in furtherance of an ongoing policy of
discrimination."  Id. (citation omitted).  Further, a Title VII
or ADA claim alleging discriminatory pay "accrues not only at
the time of the discriminatory decision but also with each
paycheck the victim receives," Davis v. Bombardier Transp.
Holdings (USA) Inc., 794 F.3d 266, 269 (2d Cir. 2015) (citing 42
U.S.C. § 2000e-5(e)(3)(A)), and an

> aggrieved person may . . . recover[] back pay for up
> to two years preceding the filing of the charge [with
> the EEOC] where the unlawful employment practices that
> have occurred during the charge filing period are
> similar or related to unlawful employment practices
> with regard to discrimination in compensation that
> occurred outside the time for filing a charge.

42 U.S.C. § 2000e-5(e)(3)(B).

"Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on" a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P., "if the defense appears on the face of the complaint." Connecticut Gen. Life Ins. Co. v. BioHealth Lab'ys, Inc., 988 F.3d 127, 132 (2d Cir. 2021) (citation omitted).

B.  Application

Brightman filed her complaint with the EEOC on October 3, 2019.  Therefore, all claims stemming from acts occurring prior to December 7, 2018 -- 300 days before she filed her complaint with the EEOC -- are time barred unless an exception applies.[2]

---

[2] Under Title VII, a prospective plaintiff has 180 days from the date of the alleged unlawful employment practice to file a complaint with the EEOC, or 300 days to file a complaint with a state or local agency.  42 U.S.C. § 2000e-5.  Brightman alleges in her complaint that she filed a complaint with the EEOC on October 3, 2019 but does not allege that she filed a complaint with any state or local agency.  Pursuant to a work-sharing agreement between New York and the federal government, however, any charge filed with the EEOC is also deemed filed with the appropriate state agency.  See Bray v. New York City Dept. of

14

Brightman argues that her Title VII and ADA discrimination and retaliation claims accruing before December 7, 2018 are not time barred because they are subject to the continuing violation doctrine.  This argument fails.  These claims are premised on alleged discrete discriminatory and retaliatory acts, and the continuing violation doctrine may not be invoked to allow otherwise time barred claims based on discrete acts unless those acts were committed in furtherance of an ongoing policy of discrimination.  Brightman does not allege that the defendants maintained any such policy, so the claims are therefore time barred.

Brightman's ADA hostile work environment claim is not time barred, however, even to the extent that it stems from events occurring before December 7, 2018.[3]  When considering whether a defendant may be liable for a hostile work environment, a court may consider "the entire scope of a hostile work environment claim, <u>including behavior alleged outside the statutory time period</u> . . . so long as <u>an</u> act contributing to that hostile environment takes place within the statutory time period."  <u>Davis-Garett</u>, 921 F.3d at 42 (quoting <u>Morgan</u>, 536 U.S. at 105)

---

Educ., No. 11cv7884 (DLC), 2013 WL 3481532, at *8 n.9 (S.D.N.Y. July 10, 2013).  Therefore, the 300 day period applies.

[3] As noted above, Brightman voluntarily withdrew her Title VII hostile work environment claim.

(emphasis in original).  Brightman alleges that several acts gave rise to a hostile work environment on the basis of disability, including the repeated denial of her requests for accommodations and several comments from supervisors that she alleges disparaged her on the basis of her disability.  Most of these acts occurred before December 7, 2018.  But Brightman alleges at least one act giving rise to her ADA hostile work environment claim occurred after December 7, 2018 -- Cintron's July 11, 2019 comment that encouraged her to consider retiring because she had been sick too often.

While that particular comment may not be actionable because it is "episodic" and not sufficiently "continuous and concerted" to give rise to hostile work environment liability on its own, Bentley v. Autozoners, LLC, 935 F.3d 76, 90 (2d Cir. 2019) (citation omitted), it need not be independently actionable in order to serve as a basis for a continuing violation that includes conduct outside of the limitations period.  "[T]he repeated conduct giving rise to a hostile work environment claim occurs over a series of days or perhaps years" and "a component act need not be actionable on its own."  McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 77 (2d Cir. 2010) (quoting Morgan, 536 U.S. at 115).  Therefore, Brightman's ADA hostile work

environment claim is not time barred, even to the extent that it
is premised on events occurring before December 7, 2018.[4]

Brightman's Title VII pay discrimination claim is not time
barred.  A "new statute of limitations clock" begins "with each
paycheck that reflects" a discriminatory pay decision.  <u>Davis</u>,
794 F.3d at 269.  The pay discrimination claim is dismissed only
to the extent that it seeks damages for pay discrimination
occurring before October 3, 2017, two years before Brightman
filed her EEOC charge.  42 U.S.C. § 2000e-5(e)(3)(B).

II.  Remaining Claims

A.   Sex Discrimination Claims

PAGNY, Delts, and Odom have moved to dismiss Brightman's
sex discrimination claims under Title VII, the NYSHRL, and the
NYCHRL.  The motion to dismiss is granted in part and denied in
part.

---

[4] The defendants have moved to dismiss Brightman's ADA hostile
work environment claim solely based on the statute of
limitations and did not move to dismiss on the grounds that the
series of events alleged in the complaint fail to state a
hostile work environment claim.  This Opinion assumes, without
deciding, that the alleged hostile acts in the complaint
collectively state a hostile work environment claim, and
addresses only whether Brightman's allegation that she was
subjected to a single hostile comment after December 7, 2018 is
sufficient to survive the motion to dismiss the claim as time
barred.

1.   Title VII and NYSHRL Claims

Title VII prohibits an employer from "discharg[ing] any individual" or otherwise "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment . . . because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  The NYSHRL prohibits an "employer . . . because of an individual's . . . sex" from "discharg[ing] from employment such individual or . . . discriminat[ing] against such individual in compensation or in terms, conditions or privileges of employment."  N.Y. Exec. Law § 296(1)(a).  NYSHRL claims are analyzed "according to the same standards" used to analyze Title VII claims.  Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 74-75 (2d Cir. 2016) (citation omitted).

In order to survive a motion to dismiss in a Title VII or NYSHRL case, "a plaintiff must plausibly allege that (1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 86 (2d Cir. 2015).  In order to plead that discrimination was a "motivating factor" in an adverse action by an employer, a plaintiff must plead "facts that directly show discrimination or facts that indirectly show discrimination by

18

giving rise to a plausible inference of discrimination." Id. at 87.  The analysis requires consideration of "the totality of the relevant facts."  Id. at 88 (quoting Washington v. Davis, 426 U.S. 229, 242 (1976)).

Brightman alleges Title VII and NYSHRL sex discrimination claims arising from three distinct adverse employment actions: PAGNY's pay discrimination,[5] her firing on August 14, 2019, and a November 2018 incident in which she was denied pay for a period during which she was undergoing security screening after returning from medical leave while her male colleague Francisco Pagero was not denied pay for a similar period.  She also alleges a Title VII claim, but not a NYSHRL claim, arising from an alleged adverse employment action occurring in November 2017, in which PAGNY awarded a higher-paying position in the mental health department to Jean Luc Bernard, a male colleague with fewer years of experience as a physician assistant.  Brightman's Title VII claims stemming from the November 2017 and November 2018 adverse employment actions are time barred.  But since the statute of limitations for NYSHRL claims is three years, Porter v. New York University School of Law, 392 F.3d 530, 532 (2d Cir.

_____

[5] For the reasons discussed above, the Title VII pay discrimination claim only survives the defendants' motion to dismiss to the extent that it seeks damages for pay discrimination occurring after October 3, 2017.

2004), her NYSHRL claim stemming from the November 2018 adverse
employment action is not time barred.

At the motion to dismiss stage, Brightman plausibly alleges
Title VII and NYSHRL sex discrimination claims arising from pay
discrimination.  A sex discrimination plaintiff may state a
Title VII pay discrimination claim by pleading facts showing
that "she performed equal work for unequal pay," or by pleading
facts showing that, in any other way, "her employer
discriminated against her with respect to her compensation
because of her sex."  Lenzi v. Systemax, Inc., 944 F.3d 97, 110
(2d Cir. 2019) (citation omitted).  In her complaint, Brightman
alleges that she was paid at a lower rate than three male
physician assistants in the mental health department, whom she
identifies by name.  She alleges that this pay disparity existed
even though she had more experience as a physician assistant
than those male colleagues and that the job duties and risks
associated with medical practice in the correctional setting are
identical in the medical and mental health departments.  At the
pleading stage, these allegations are sufficient to survive a
motion to dismiss.  While the defendants argue that Brightman's
male physician assistant colleagues cannot serve as comparators
because they worked in a different department, that is not the
relevant standard.  The standard is whether Brightman was paid

"less than her male peers who performed equal work," Lenzi, 944 F.3d at 110, and at the pleading stage, Brightman has plausibly alleged that she and her male colleagues performed equal work even though they were assigned to different departments. Brightman may therefore pursue her Title VII pay discrimination claim to the extent that it alleges pay discrimination occurring after October 3, 2017,[6] and her NYSHRL pay discrimination claim to the extent that it alleges pay discrimination occurring after October 3, 2016.

By contrast, Brightman has not plausibly alleged that her sex was a motivating factor for the November 2018 pay denial or August 14, 2019 discharge.[7]  In both instances, she claims that she was subjected to an adverse employment action related to her use of medical leave, while her male colleague Pagero was not subject to the same adverse employment action despite using medical leave.  It is true that, "[a]t the pleadings stage, a plaintiff may . . . allege disparate treatment by pleading the more favorable treatment of employees not in the protected

---

[6] As discussed above, the claim is time barred to the extent that it is premised on pay discrimination occurring before October 3, 2017.

[7] As noted above, the November 2018 incident may only give rise to NYSHRL liability because any Title VII claim would be time barred, while the August 2019 incident can potentially give rise to both Title VII and NYSHRL liability.

group." <u>Farsetta v. Dep't of Veterans Affs.</u>, No. 16cv6124
(DLC), 2017 WL 3669561, at *5 (S.D.N.Y. Aug. 24, 2017) (quoting
<u>Littlejohn v. City of New York</u>, 795 F.3d 297, 312 (2d Cir.
2015)).  But when a plaintiff relies on such a showing, she
"must allege that she was similarly situated in all material
respects to the individuals with whom she seeks to compare
herself." <u>Brown v. Daikin Am. Inc.</u>, 756 F.3d 219, 230 (2d Cir.
2014) (citation omitted).  "While detailed factual allegations
are not required, a formulaic recitation of the elements of a
cause of action will not do." <u>Vega</u>, 801 F.3d at 86 (quoting
<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

Here, as a basis for her argument that she and Pagero were
similarly situated, Brightman points only to her allegations in
the complaint that Pagero (1) was a "colleague," (2) took
medical leave, and (3) sought to return to work in November
2018.  The complaint does not allege that Brightman and Pagero
were similarly situated in any other way.  Brightman's
allegations are thus that she experienced an adverse action and
that a male colleague, who was similarly situated in some
respects but may or may not have been similarly situated in
other material respects, did not.  This cannot, standing alone,
allow for a "reasonable inference that the defendant is liable
for the misconduct alleged." <u>Vega</u>, 801 F.3d at 86 (quoting

Iqbal, 556 U.S. at 678).  Brightman's Title VII and NYSHRL claims stemming from the November 2018 denial of pay and her firing must therefore be dismissed.

      2.  NYCHRL Claims

The NYCHRL prohibits any "employer or an employee or agent thereof" from "discharg[ing] from employment" any person "because of . . . gender," N.Y.C. Admin. Code § 8-107(1)(a)(1), or "discriminat[ing] against [any] person in compensation or in terms, conditions or privileges of employment" because of gender, N.Y.C. Admin. Code § 8-107(1)(a)(3).  The NYCHRL is to be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible," and "federal courts must consider separately whether [conduct] is actionable under the broader New York City standards" even if "challenged conduct is not actionable under federal and state law."  Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013) (citation omitted).  To state a claim for discrimination under the NYCHRL, "the plaintiff need only show differential treatment -- that she is treated 'less well' -- because of" a protected characteristic.  Id. at 110. NYCHRL claims are subject to a three year statute of limitations.  N.Y.C Admin. Code § 8-502(d).

Brightman alleges that the conduct that violated the NYSHRL also violated the NYCHRL, and for the reasons discussed above, the defendants' motion to dismiss is granted in part.  With respect to her firing and to PAGNY's denial of pay during her November 2018 security screening period, she has not pleaded facts sufficient to plausibly allege that she was treated less well because of her gender.  Simply pleading that a male colleague, who may or may not have been similarly situated, was treated differently is not enough to plausibly allege that the differential treatment occurred because of Brightman's gender.  Her NYCHRL pay discrimination claim, however, survives the defendants' motion to dismiss, for the same reasons that Brightman's Title VII and NYSHRL pay discrimination claims survive.  Because the NYCHRL includes a three year statute of limitations, she may pursue a NYCHRL pay discrimination claim to the extent that the alleged pay discrimination occurred after October 3, 2016.

   B.   Equal Pay Claims

   The defendants have moved to dismiss Brightman's claims under the EPA and the NYSEPA.  For the following reasons, the motion to dismiss is largely denied.[8]

---

[8] As noted earlier, Brightman does not dispute the defendants' argument that her EPA claims accruing before June 8, 2017 are

The EPA prohibits, with few exceptions, employers from "discriminat[ing] . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [they] pay[] wages to employees of the opposite sex . . . for equal work," with equal work defined as "jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions."  29 U.S.C. § 206(d)(1).  "[T]o prove a violation of the EPA, a plaintiff must demonstrate that (1) the employer pays different wages to employees of the opposite sex; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions."  E.E.O.C. v. Port Auth. of New York & New Jersey, 768 F.3d 247, 254-55 (2d Cir. 2014) (citation omitted).  "At the pleading stage . . . a plausible EPA claim must include sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job content was substantially equal."  Id. at 256 (quoting Iqbal, 556 U.S. at 678).  Federal EPA claims and NYSEPA claims are analyzed according to the same standards.  Kent v. Papert Companies, Inc., 309 A.D.2d 234, 246 (1st Dep't. 2003).

---

time barred.  The defendants' motion to dismiss them is therefore granted.

The defendants' motions to dismiss Brightman's EPA and
NYSEPA claims are denied.  As addressed in the discussion of
Brightman's claims for pay discrimination under Title VII and
its state and local analogues, Brightman has alleged that she
was paid at a lower rate than three named male colleagues
employed as physician assistants in the mental health
department.  She further alleges that her position as a
physician assistant in the medical department involved similar
job duties and a similar level of workplace risk as the higher-
paying mental health department positions.  While the defendants
argue that her allegations regarding the substantial equivalence
of the medical and mental health department positions are
conclusory and based merely on the shared job title of physician
assistant, this assertion is unavailing.  Her complaint in fact
alleges specific facts regarding the identical job duties and
job risk shared by physician assistants in the medical
department and the mental health department.  These allegations
are sufficient to state a claim.

C.   Retaliation Claims

The defendants have moved to dismiss Brightman's
retaliation claims, which arise under Title VII, the ADA, the
EPA, the NYSHRL, the NYCHRL, and the NYSEPA.  For the following
reasons, the defendants' motion is granted.

26

1.   Federal and State Law Claims

In order to survive a motion to dismiss for failure to state a claim for Title VII retaliation, "the plaintiff must plausibly allege that: (1) defendants discriminated -- or took an adverse employment action -- against him, (2) <u>because</u> he has opposed any unlawful employment practice." <u>Vega</u>, 801 F.3d at 90 (citation omitted) (emphasis supplied).  This standard includes a causation requirement: "a plaintiff must plausibly plead a connection between the act and his engagement in protected activity." <u>Id</u>.  A causal connection in retaliation claims can be pleaded either "directly," by pleading allegations of "retaliatory animus directed against the plaintiff by the defendant," <u>Littlejohn</u>, 795 F.3d at 319 (citation omitted), or "indirectly by timing: protected activity followed closely in time by adverse employment action." <u>Vega</u>, 801 F.3d at 90.  A similar analysis is used to evaluate Brightman's other federal and state law retaliation claims.  <u>See</u> <u>Widomski v. State University of New York (SUNY) at Orange</u>, 748 F.3d 471, 476 (2d Cir. 2014) (ADA); <u>Mullins v. City of New York</u>, 626 F.3d 47, 53 (2d Cir. 2010) (EPA); <u>Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.</u>, 716 F.3d 10, 14 (2d Cir. 2013) (NYSHRL); <u>Benzinger v. Lukoil Pan Americas, LLC</u>, 447 F.Supp.3d 99, 130 (S.D.N.Y. 2020) (NYSEPA).

27

The defendants' motion to dismiss the federal and state law retaliation claims is granted because, even assuming that she has plausibly pleaded the other elements of a prima facie retaliation case, Brightman has not plausibly pleaded a causal connection between her participation in protected activity and any adverse employment action.  Brightman's complaint does not plead direct evidence of retaliatory animus.  Instead, she appears to argue that her complaint demonstrates causation by pleading facts showing that the adverse employment actions closely followed the protected activity.

The significant gap in time between her protected activity and the alleged adverse employment actions, however, weighs against an inference of causation.  The Second Circuit "has not imposed a strict time limitation when a retaliation claim relies exclusively on temporal proximity."  Agosto v. New York City Dep't of Educ., 982 F.3d 86, 104 (2d Cir. 2020).  A period of a few months between the protected activity and the adverse action may allow for an inference of causation.  Abrams v. Department of Public Safety, 764 F.3d 244, 254-55 (2d Cir. 2014).  In this case, however, the gaps between the protected activities and the adverse employment actions are often too great to allow for an inference of causation with respect to any of them.  The plaintiff alleges that she undertook her first protected

activity in September 2016, when she complained to PAGNY human resource official Scott about a perceived gender pay disparity. But she does not allege that she experienced any adverse employment action until May 9, 2018, nearly two years later, when she was fired when attempting to return to work.[9] Similarly, the final protected activity alleged in Brightman's complaint is her September 2018 complaint to Odom regarding her perception that PAGNY was discriminating against her.  But she argues that this September 2018 protected activity can support an inference that her August 14, 2019 firing was retaliatory. These significant gaps in time -- among other lengthy gaps between protected activities and adverse employment actions described in Brightman's complaint -- weigh against a finding that Brightman has pleaded facts producing an inference of causation.

Moreover, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."  Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir. 2001).

---

[9] For the reasons noted above, Brightman's Title VII and ADA retaliation claims stemming from alleged retaliatory acts occurring before December 7, 2018 are time barred.  The analysis of the alleged act of retaliation occurring on May 9, 2018 applies only to Brightman's EPA and NYSHRL claims.

Brightman alleges a slew of protected activities, primarily
complaints regarding alleged acts of discrimination to various
PAGNY officials, and a series of adverse actions.  These alleged
protected activities, however, began several years before the
first alleged adverse action occurred.  Once the adverse actions
began, they were largely consistent across the multi-year period
during which Brightman was allegedly subjected to them.  There
is no apparent relationship between the frequency of Brightman's
protected activities on one hand, and the frequency and severity
of PAGNY's alleged adverse actions on the other.  This
consistency in conduct by PAGNY, and lack of an apparent
relationship between Brightman's complaints and PAGNY's conduct,
precludes the required inference of causation.

   2. NYCHRL Claim

  The NYCHRL prohibits "retaliat[ion] . . . against any
person because such person has . . . opposed any practice
forbidden" by the NYCHRL.  N.Y.C. Admin. Code § 8-107(7).
Retaliation claims under the NYCHRL are analyzed similarly to
those described above, although the NYCHRL is "slightly more
solicitous of retaliation claims." Malena v. Victoria's Secret
Direct, LLC, 886 F.Supp.2d 349, 362 (S.D.N.Y. 2012) (citation
omitted).  To survive a motion to dismiss a NYCHRL claim,
however, a plaintiff must plead facts giving rise to an

inference of a causal connection between the plaintiff's protected activity and an adverse employment action.  Brightman has not done so for the reasons described above, and defendants' motion to dismiss Brightman's NYCHRL retaliation claim is therefore granted.

## Conclusion

For the reasons stated above, the defendants' motion to dismiss is granted in part.  The following claims are dismissed:

1. retaliation claims under Title VII, the ADA, the EPA, the NYSHRL, the NYCHRL, and the NYSEPA;

2. Title VII hostile work environment claim;

3. Title VII, NYSHRL, and NYCHRL sex discrimination claims arising from adverse actions other than alleged pay discrimination;

4. ADA discrimination claims accruing before December 7, 2018; and

5. EPA claims accruing before June 8, 2017.

    Brightman may proceed with the following claims:

1. claims alleging pay discrimination in violation of Title VII, the NYSHRL, and the NYCHRL;

2. disability discrimination claims under the ADA that accrued on or after December 7, 2018;

3. disability discrimination claims under the NYSHRL and

    NYCHRL;

4. ADA hostile work environment claim;

5. EPA claim accruing after June 8, 2017;

6. NYSEPA claim; and

7. FMLA claim.

Dated:    New York, New York
          May 19, 2021

_____
          DENISE COTE
    United States District Judge